(79 South. 499)

HALE v. TYSON. (3 Div. 325.)

(Supreme Court of Alabama. March 23, 1918. Rehearing Denied May 9, 1918.)

1. ATTORNEY AND CLIENT ⊙➞171—LIENS—"RETAINING LIEN"—"CHARGING LIEN."

An attorney may have, for his services, a retaining lien, authorizing him to hold papers or moneys coming into his possession professionally, and a charging lien, or right to recover from and against the fund recovered by his aid.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Charging Lien; First Series, Retaining Lien.]

2. ATTORNEY AND CLIENT ⊙➞182(4)—LIENS—REAL ESTATE.

Under Code 1907, § 3011, providing for attorneys' liens for compensation, an attorney is not entitled to have a lien impressed on real estate recovered by him for his client.

3. STATUTES ⊙➞226 — CONSTRUCTION — STATUTES ADOPTED FROM OTHER STATES.

Where code committee and commissioner, in adopting Georgia statute giving lien to attorney on personalty or realty, omitted reference to realty, the construction given the Georgia statute by courts of that state cannot be followed.

4. ATTORNEY AND CLIENT ⊙➞171—LIENS.

The attorney's lien for services is fixed by statute, under Code 1907, §§ 3009–3011.

Anderson, C. J., and Sayre and Somerville, JJ., dissenting.

Appeal from Circuit Court, Montgomery County; Gaston Gunter, Judge.

Bill in equity by John R. Tyson against W. D. Hale. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Weil, Stakely & Vardaman, of Montgomery, for appellant. John R. Tyson, of Montgomery, for appellee.

THOMAS, J. The purpose of the bill was to establish and enforce an attorney's lien on the real estate of the client the fruit of the litigation.

It is averred in the bill that during the year 1910, and on June 1st thereof, complainant, an attorney, practicing his profession, was employed by Mary M. Hale as administratrix of the Figh estate to collect a claim therefor, and that he obtained a judgment against one Fitzpatrick, causing the same to be registered as required by statute; that during 1914 he caused execution to issue and be levied on lands owned by the defendant in judgment; that at a sale of such real estate Mary M. Hale became the purchaser, and

a sheriff's deed was executed to her in July, 1914. It is further averred that during the year 1917 (and prior to June of that year) said Hale transferred and assigned in writing said judgment to W. D. Hale, and executed and delivered to defendant a deed to the property acquired as aforesaid; that after said Hale became the owner of the judgment, defendant "consulted with orator, obtained legal advice looking to the collection of said judgment and the sale of the property acquired by him from Mary M. Hale." It is further averred that complainant, as attorney, "prepared the deed and the assignment which was made and executed by Mary M. Hale to the defendant, and after the defendant acquired said title to the property he consulted with complainant, and obtained legal advice from him, well knowing that complainant as attorney for Mary M. Hale had obtained the said judgment, and had rendered other professional services looking to the enforcement of said judgment, and well knowing that complainant had a lien upon said judgment for the professional services rendered by him for Mary M. Hale, as administratrix of the estate of Mrs. E. M. Figh." The bill further avers that in May, 1917, a second execution issued on this judgment, and resulted in a sale of the west half of the northeast quarter of section two, township 21, range 16, whereat W. D. Hale became the purchaser, and a sheriff's deed was made to him on June 19, 1917.

The prayer of the bill is that the court ascertain the reasonable value of complainant's services, and enter a decree declaring "a lien in his favor upon the property above described"; and, upon default in the payment of the amount so found by the court to be due the complainant, within the time by the court fixed for its payment, that the court decree a sale of the lands for the enforcement of the lien. The prayer was also for general relief. The demurrer of the respondent on the ground that there is no equity in the bill was overruled. As we are examining the question on its merits, the special grounds of demurrer need not be discussed.

It may be observed that neither the amounts bid at the respective execution sales, nor the amount for which the judgment was transferred and assigned, is averred. No charge of fraud on the part of the client, or on that of her assignee in judgment, to defeat the lien, if any complainant has, is averred. The several transactions made the basis of the instant suit took place with the knowledge or consent of complainant.

[1] At the outset, it is necessary that we consider the nature of the attorney's lien on the client's papers, suit, funds, securities, or judgments, and the fruits thereof, for professional services rendered in the par-

ticular matter. Such liens have been declared and enforced as of two classes, viz. general, promissory, or retaining liens, and charging liens. Weed Sewing Machine Co. v. Boutelle, 56 Vt. 570, 48 Am. Rep. 821; 2 R. C. L. § 150, p. 1063; Warfield v. Campbell, 38 Ala. 527, 82 Am. Dec. 724. The retaining lien attaches to papers, books, documents, securities, or moneys that come into the attorney's possession, professionally or in the due course of his professional employment without a special contract as to it; having the possession, the attorney has the right to retain the same as against the client, his assignments, or attachments, until the attorney's lien for legal services is paid. Though this retaining lien has been held not to extend to the judgment, as there can be no possession thereof by the attorney, it has been decided to extend to an execution or copy thereof in the attorney's hands. Stewart v. Flowers, 44 Miss. 513, 7 Am. Rep. 707. A failure to properly distinguish between a retaining and a charging lien has led to confusion, and this may explain the conflict in the decisions on this subject. Weeks on Attorneys at Law, § 369; 2 R. C. L. p. 1063.

Of the charging lien of attorneys it is said:

"In addition to the retaining lien * * * an attorney has what is generally known as a particular, special, or charging lien on the judgment, decree or award obtained for his client, for his services rendered in procuring it. Such lien, as recognized by the common law, is the right of an attorney or solicitor to recover his taxable costs from a fund recovered by his aid, and the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same, and also to prevent or set aside assignments or settlements made in fraud of his right." "While, as stated, the attorney's lien as enforced at common law is generally recognized, it is frequently the subject of express statutory regulation, which must, of course, be complied with, and the scope of such lien has been greatly enlarged by statute in many states; and in some jurisdictions the right of an attorney to a lien rests entirely on statute, and there is no common law or equitable right of lien. In other states, however, there are no statutes relating to attorneys' liens, and the right thereto is based upon the common law."

Mr. Weeks, in his work on Attorneys at Law (section 369), collects the several English cases in which the attaching lien has been enforced on the fruits of the judgment or decree, which the attorney's service has obtained. We have examined each of these cases, with the result that, on the petition of the attorney, his lien was enforced—out of the funds of a lunatic's estate for "his bill of costs in taking out a commission lunacy" (Ex parte Price, 2 Ves. Sr. 407; Barnesley v. Powell, Ambler's Rep. 102); "out of a duty decreed to an administrator" (Turwin v. Gibson, 3 Atk. 720, case 269); "on the judgment for his costs" (Mitchell v. Oldfield, 4 Term Rep. 123); "upon the debt and costs recovered in the cause" (Read v. Dupper, 6 Term Rep. 361; Randle v. Fuller, 6 Term Rep. 456); and "upon the payment of the annuity to which the executor might be entitled" (Skinner v. Sweet, 3 Maddock's Rep. 244).

The first case we find on the question by the Supreme Court of the United States is Wylie v. Coxe, 15 How. 415, 14 L. Ed. 753. Mr. Justice McLean, delivering the opinion of the court, said:

"The evidence proves that the complainant was to receive a contingent fee of 5 per centum out of the fund awarded, whether money or scrip. This being the contract, it constituted a lien upon the fund, whether it should be money or scrip. The fund was looked to and not the personal responsibility of the owner of the claim. A bill filed under the act would have authorized an injunction for the amount claimed by complainant. Such a procedure would be within the act. But under the contract the lien on the fund in the hands of the administrator, is a sufficient ground for an equity jurisdiction. The payment of the fund to the executrix in Mexico would place it probably beyond the reach of the complainant."

The annotations of the Wylie Case (5 Rose's Notes U. S. Rep. 336) show that the lien, when enforced, was against the "fund" procured or recovered for the client by the attorney. Wright v. Tebbits, 91 U. S. 252, 23 L. Ed. 320; Manning v. Sprague, 148 Mass. 18, 18 N. E. 673, 1 L. R. A. 516, 12 Am. St. Rep. 508; United States v. Boyd (C. C.) 79 Fed. 858; Stanton v. Embry, 93 U. S. 548, 23 L. Ed. 983; Andrews v. Morse, 12 Conn. 444, 31 Am. Dec. 752. It has been declared in state jurisdictions that the charging lien of an attorney does not extend to the real estate to which the client's lien has been successfully prosecuted in equity, nor to the client's land sought to be subjected to an unfounded claim or liability, nor to real property recovered in ejectment. Humphrey v. Browning, 46 Ill. 477, 95 Am. Dec. 446; Martin v. Harrington, 57 Miss. 208. Mr. Jones, in his late work on Liens (1914, 3d Ed., § 229), says:

"An attorney's lien for his fee upon the judgment recovered does not attach to land which is sold in satisfaction of the judgment and purchased by the client." Cowen v. Boone, 48 Iowa, 350; Keehn v. Keehn, 115 Iowa, 467, 88 N. W. 957; Wishard v. Biddle, 64 Iowa, 526, 21 N. W. 15; Stewart v. Flowers, supra.

See, also, 2 Kent's Comm. 640, 641; 4 Cyc. 1014.

Ruling Case Law has to say, of the charging lien of the attorney upon the judgment, decree, or award, for compensation for services rendered in procuring the award (volume 2, § 170, pp. 1079, 1080), that it has been recognized from an early period and now exists in almost every jurisdiction under the common-law rule or by virtue of statute. It is declared that the lien of the attorney upon his client's judgment is an interest to the same extent as if the client had assigned it to him as collateral security for his fees and disbursements, and that he also has an interest in the legal incidents which attach thereto. As supporting this text is cited Hobson v. Watson, 34 Me. 20, 56 Am. Dec. 632, to the effect that a bond given under the statute for the release of a judgment debtor

from arrest is a substitute for the custody of the debtor, and is a legal incident attached to the judgment and execution, and that the attorney's lien attaches to such bond. The only other authority on which the text is based was that of Loofbourow v. Hicks, 24 Utah, 49, 66 Pac. 602, 55 L. R. A. 874, where the holding was that the attorney's lien allowed and declared by the judgment foreclosing a real estate mortgage attached to the land and might be enforced against it after it had been bid in by the mortgagee or his assignee with notice, for an amount less than that due on the mortgage which has been credited on the judgment, "especially when the sale is brought about without payment of the fees, through the connivance or fraud of the purchaser or those acting in his behalf." In each of these cases, the fund or moneyed recovery was impressed with the lien; and in the latter case there was con-nivance or fraud of the purchaser to avoid payment of that part of the decree awarding the attorney his fees. These two cases are not sufficient to overturn the good reason underlying the many authorities to be found protecting the client's real estate, and the purchaser thereof, from the operation of such charging liens or equitable mortgages. Jones on Liens (3d Ed.) § 229.

In this state we have a declared statutory lien of attorneys at law, embracing the two classes, to wit, the retaining lien and the charging lien. The statute covers the whole subject, and renders largely unnecessary the foregoing discussion of authorities in the other states of the Union and in England. Since, however, the Alabama statute was taken from the Georgia statute, or is a modification thereof, and since the state of Georgia has attempted a codification of the common law, we trust that the historical view of the subject given is not out of place.

[2] Our statutory liens of attorneys at law were recently discussed in Denson v. Alabama Fuel & Iron Company, 73 South. 525, 531.[1] It was there said, treating of the pertinent portion of the statute declaring a charging lien upon suits for the recovery of personal property and upon judgments and decrees for the recovery of the same, that the attorney at law has a lien (1) "for services rendered," (2) upon suits, etc., for the "lien or claim of the attorney for his fees," and (3) upon all suits for the recovery of personal property, etc., "for their fees." "Thus clearly does the statute declare the extent of such liens under contracts of employment subsisting between attorney and client. In the absence of contract stipulation, the reasonable value of the services rendered will control." Code, § 3011. Viewing the whole statute, we may say that the statutory lien of the attorney is not broader than its terms. Its provisions in substance are: (1) That the attorney at law shall have a lien on all papers and moneys of his client, in his possession, for services rendered to the client in

reference thereto; (2) a lien upon suits, judgments, and decrees for money, with the same right and power that the client had or may have over such suits, judgments, and decrees to enforce such lien, for the amount due him for professional services rendered in that behalf; (3) a lien upon (a) all suits for the recovery of personal property, upon (b) all judgments or decrees for the recovery of the same, and upon (c) the personal property recovered on such judgments or decrees; (4) that this lien may be enforced as other liens on personal and real estate; and (5) that the personal property recovered on such judgments or decrees shall remain subject to such lien, "unless transferred to bona fide purchasers without notice." Thus it is observed that by this statute no charging lien of an attorney is conferred, and no provision is made for its enforcement on the real estate of the client, the subject of legal services, or which has been successfully defended or recovered as the result of professional advice or services rendered by the attorney.

Our statute, and its relation to the Georgia statute, together with the construction by the Georgia court given the latter, and the modification thereof as so construed, will be further discussed later. In answer to the inquiry whether such statutory lien was given on lands the fruits of a sale under execution on a moneyed judgment or decree. It is pertinent to note that the public policy of this state, before the adoption of the statute, forbade the creation and enforcement of attorneys' liens on real estate of the client, the subject of, acquired by, or recovered in, the litigation in which the professional services were rendered by the attorney. Warfield v. Campbell, 38 Ala. 527, 82 Am. Dec. 724; Hinson v. Gamble, 65 Ala. 605; McWilliams v. Jenkins, 72 Ala. 480; Mosely v. Norman, 74 Ala. 422; Kelly v. Horsely, 147 Ala. 508, 511, 41 South. 902; Fuller v. Clemmons, 158 Ala. 340, 48 South. 101. Where the lien was declared, it was held to exist and to be enforceable on moneys and personal property acquired by reason of the judgment or decree or in payment thereof, and was expressly limited to the services rendered in the particular action or proceeding in which the judgment or decree was obtained. Jackson v. Clopton, 66 Ala. 29; Mosely v. Norman, supra; Fuller v. Clemmons, supra.

In Ex parte Lehman, Durr Company, 59 Ala. 631, 634, no question of the enforcement of an attorney's lien for professional services on lands recovered by the litigation or in discharge of the judgment or decree was presented for consideration; only the right of set-off of judgment without the discharge of the attorney's lien thereon was decided, and such right was denied on the theory that the attorney is to be regarded as "an assignee of the judgment or decree, to the extent of his fees, from the date of the rendi-

[1] 198 Ala. 383.

tion of the judgment or decree." Warfield v. Campbell, 38 Ala. 527, 82 Am. Dec. 724.

In a case where, by bill in equity, it was sought to establish an attorney's lien on real estate of his client, for professional services rendered in its recovery or in the establishment of title thereto, Chief Justice Brickell said:

"Whether a solicitor, successfully prosecuting a suit in equity to establish the title of his client to real estate, has a lien on the estate for his fees, was decided in Hinson v. Gamble, 65 Ala. 605; * * * Humphrey v. Browning, 46 Ill. 476 [95 Am. Dec. 446]; Smalley v. Clark, 22 Vt. 598; Cozzens v. Whitney, 3 R. I. 79; Hanger v. Fowler, 20 Ark. 667. It seems to us unwarranted by principle to extend the lien of an attorney or solicitor to lands which have been the subject of suit. There would be much of difficulty and confusion resulting from it, embarrassing alienation it is the policy of the law to unfetter." McCullough v. Flournoy, 69 Ala. 189.

See, also, on this phase of the subject, McWilliams v. Jenkins, supra; Higley v. White, 102 Ala. 604–609, 15 South. 141; Kelly v. Horsely, supra.

Nor has such a lien been held to attach to lands which were sought to be subjected to an unfounded claim or liability, and the professional services were rendered in the successful resistance of such claim or liability. Hinson v. Gamble, supra; McWilliams v. Jenkins, supra; Warfield v. Campbell, supra; Higley v. White, supra; Lee v. Winston, 68 Ala. 402. In Lee v. Winston, 68 Ala. 402, the insistence was that an attorney's lien be declared and enforced on the lands of the client for services rendered in filing a bill in equity to enjoin attachments by the husband's creditors against the wife's lands, and to divest title out of the husband. The suit resulted in a decree vesting the title to the lands in the wife. Judge Stone made a distinction between the attorney's lien on a judgment and that on the client's land, approving the argument of Chief Justice Breese in Humphrey v. Browning, 46 Ill. 476, 95 Am. Dec. 446, and citing Smalley v. Clark, supra; Hanger v. Fowler, supra; Cozzens v. Whitney, supra. In that case our learned Chief Justice propounds (but does not answer) the inquiry here involved by the statement that that "was not a case of judgment recovered, payable in money, which, when collected, may, and ordinarily does, pass through the hands of the attorney. It arose out of a defensive proceeding, which protected [the lands] against an attempt to charge them with a debt." The Lee-Winston Case has been cited as denying that the attorney's lien attached to lands the subject or the proceeds of the litigation. McCullough v. Flournoy, 69 Ala. 189; McWilliams v. Jenkins, 72 Ala. 480; Higley v. White, 102 Ala. 604, 15 South. 141.

It is true that the Rhode Island case (Cozzens v. Whitney, supra), cited by Judge Stone as denying the lien, was a proceeding to remove cloud from title, yet in Hanger v. Fowler, supra, 20 Ark. 676, there was a recovery of lands. The justice said:

"To hold that the solicitor's lien attached to the land recovered by the heirs of Cunningham would be introductory of a new principle, and an extension of the doctrine of the solicitor's lien beyond an adjudged case, and would in effect be to create an equitable mortgage which would be exposed to all the objections that have or can be made to the doctrine of equitable mortgages in England, and even more under our registry system, without having the same plausible ground to stand upon, which is the presumed agreement to execute a legal mortgage."

To the same effect was Smalley v. Clark, supra, 22 Vt. 606; Stewart v. Flowers, 44 Miss. 513, 525, 7 Am. Rep. 707.

In the Humphrey v. Browning Case lands were recovered in ejectment, and were sought to be impressed with an attorney's lien for professional services rendered in the recovery suit; and the English and American authorities are collected to the effect that an attorney has no lien for his compensation upon the real estate recovered for his client. The Chief Justice said:

"It may be, a lawyer's services in recovering a tract of land by suit are as meritorious as those of a carpenter or mason who builds a house, but the latter had no lien until it was given to them by an express statute. At common law, liens of particular persons, in certain cases, were recognized and enforced, but they were of a kind that attached to an article in the actual possession of the bailee. If he parted with the possession, the lien, in general, was lost."

In Keehn v. Keehn, 115 Iowa, 467, 471, 472, 88 N. W. 957, 958, a suit for divorce and alimony, the court said:

"In their argument they [the attorneys] say they obtained a lien on the property of the main defendant, and that he and his codefendants are seeking to defraud them out of their fees. The exact contention is that they had an attorney's lien upon the land referred to in the petition, which could not be defeated by a compromise and settlement between the parties. Let us see, then, if they had such a lien. In Ward v. Sherbondy, 96 Iowa, 481 [65 N. W. 413], and Jennings v. Bacon, 84 Iowa, 406 [51 N. W. 15], we expressly held that our statute with reference to attorney's liens stands in lieu of the common-law lien, and that to obtain such a lien the statute must be strictly followed. Even at common law an attorney had no lien on real estate, although land was the subject-matter of litigation. McCullough v. Flournoy, 69 Ala. 189; Hanger v. Fowler, 20 Ark. 667. * * * Tennessee stands alone in opposition to this well-nigh universal rule. Hunt v. McClanahan, 1 Heisk. [Tenn.] 503. But even there it is said that the attorney has no lien until the real estate is sold and the sale confirmed for his client's benefit. Perkins v. Perkins, 9 Heisk. [Tenn.] 97. Our statute makes no provision for a lien on real estate in favor of the attorney. See Code, § 321. And we have expressly held that an attorney has no lien on real estate to which he has perfected title for his client. Cowen v. Boone, 48 Iowa, 350; Gas Co. v. West, 50 Iowa, 16."

In McWilliams v. Jenkins, 72 Ala. 480, the suit was in equity for specific performance of contract, where lands were "condemned for satisfaction of complainant's demand," and complainant's counsel had filed a petition asking a reference for the ascertain-

ment and report of a reasonable fee for their services rendered in said cause, and praying that such attorney's fee due them "be declared a lien on the land ordered to be sold." Mr. Justice Somerville, writing to that decision, said that the lien which an attorney at law has for his stipulated or reasonable fees is limited to the judgment recovered in the particular cause; that "it does not extend to the lands, or other like property, which is the subject-matter of litigation belonging to the client"; that "the solicitors of the appellant would be entitled to no lien, extending beyond the amount of the decree obtained for their client. Their rights are gauged by and must be commensurate with his." Thus was it recognized that the attorney's lien is on the amount of the moneyed decree obtained for the client, and on nothing else.

In Higley v. White, 102 Ala. 604, 609, 15 South. 141, 143, are cited the foregoing Alabama decisions, to the effect that an attorney's lien for services rendered a client does not extend to lands the subject of a suit to establish title thereto, or recovered or successfully defended in ejectment, or otherwise successfully defended against an unjust claim or an unwarranted attempt to subject them to an alleged lien or liability. The justice there writing observed that in any case in which such lien attaches there must be a moneyed judgment or decree to which the lien attaches; that:

"If a judgment or decree for money * * * has been rendered in a cause, * * * and real estate * * * *condemned to sale for its satisfaction*, the lien may be declared * * * on the decree, and made *operative on the proceeds of the sale of the land, to the extent that the proceeds may not be liable to superior claims.* The incidental liability of the land, or the proceeds of its sale, for the satisfaction of the decree, is no invasion of the rule we have announced against declaring a lien on land for the payment of solicitor's fees and charges." (Italics supplied.)

To a full understanding of the Higley Case, it may be said that it originated in a bill in equity by a purchaser for the specific performance of a contract, in which it was averred that Higley had a lien on real estate, which could be enforced only in a court of equity. 90 Ala. 103, 7 South. 440. The decree was in favor of the complainant, ordering a reference to ascertain the amount for which Higley should have a lien, and decreeing that such demand should be a charge or lien on the land in question; and further decreeing that, upon default in the payment of the sum so ascertained to be due Higley, a sale of the land should be had to satisfy the lien. At the sale which was made on September 28, 1891, under the terms of the decree, complainant became the purchaser, bidding a less sum than the amount of his judgment. He tendered in cash the amount of the costs, together with his receipt for the balance of the decree, which tender was not accepted by the clerk in discharge of his bid. Thereafter (on October 21st, and before confirmation) the attorneys representing complainant filed a petition in said cause, setting out the services rendered complainant in the procurement of the moneyed decree, and in having said lien on the lands declared, and praying that an attorney's lien be declared in behalf of petitioners upon the proceeds of the sale of the land, and that the clerk and register be directed to pay petitioners the reasonable attorney's fees so ascertained to be due for services rendered in said cause. On the trial of this petition, the court decreed that complainant pay to the clerk an additional sum sufficient to discharge the costs of the case, including "the further sum of $325, the balance due on the fees of his said attorneys"; such additional sum to be considered a part of the bid by the complainant at the sale under the former decree. It must be remembered that the sale to complainant had not been consummated by payment of the amount bid and confirmation by the court. When thus understood, the Higley Case is seen to conflict in no wise with the rule long prevailing as to the charging lien of the attorney on the real estate of his client. In Kelly v. Horsely, 147 Ala. 508, 511, 41 South. 902, 903, the important question was dismissed by Mr. Justice Tyson, with the observation that:

"Our court has never extended the lien beyond the moneyed judgment, but has often held that no lien attaches to lands or other things other than the moneyed judgment."

The property sought to be subjected to the attorney's lien in Williams v. Bradley, 187 Ala. 158, 161, 65 South. 534, was the result of an execution on a moneyed judgment, a levy and sale of real estate, and a conveyance thereof to the purchasers; the plaintiff in execution being the purchaser, and the defendant in execution redeeming therefrom. The court held that the property was sold by direction of the plaintiff in execution, and bid in at a price sufficient to pay the entire judgment, and that the law appropriated the bid to its discharge.

That the foregoing is in accord with the latest enunciation of this court is evident from the discussion by Mr. Justice McClellan in Harton v. Amason, 195 Ala. 594, 599, 71 South. 180, a suit in equity to enforce an attorney's lien based on "a suit for money, among other things," that had been compromised by a conveyance of the real estate in question to a corporation. The agreement of compromise was "to convey or cause to be conveyed unto the said H. M. Harton, or if he desires, unto the Windsor Realty & Trust Company," of which Harton was president. The effect of this decision was, that where an attorney having a lien for his compensation for professional services rendered perfects an agreement of settlement, which is consummated by a conveyance of the lands the subject of the litigation, to the

corporation of which his client is president, neither the contract for compensation, nor that for the settlement, gives the attorney a .contractual lien; and that the attorney waives his statutory lien on the judgment by the agreement and the conveyance pursuant thereto. Whether the present statute (Code, § 3011) can be construed to give a lien on lands acquired by the client in consideration of the judgment is not decided. Mr. Justice McClellan raises the question now presented for decision as follows:

"Whatever may be the ultimate construction of the statute in respects indicated, it is quite clear in this instance that the agreement of the attorney to the dismissal by his client of the suit upon which he would now rest a claim to a statutory lien effected to extinguish the basis of any statutory lien that might once have existed upon the suit."

The construction of the statute "in respects indicated" was that the attorney has a lien for professional services rendered upon the judgment or decree in the instances indicated in the statute, and "that an attorney or solicitor has no lien on real estate of his client for his remuneration." Higley v. White, supra; Kelly v. Horsely, 147 Ala. 508, 41 South. 902. It would appear that the complainant's claim would be denied by the foregoing decisions. The result would appear to be beyond controversy when the history of the Alabama statute is considered.

[3] Adverting to our statute (Code, § 3011), we have noted that it was taken from a Georgia statute. Analysis of the construction placed on the Georgia enactment by the Supreme Court of that state is persuasive that it was originally intended to adopt the Georgia statute as so construed (Fuller v. Lanett Bleaching Co., 186 Ala. 117, 65 South. 61); that is, without material change. Since, however, a very material change was made in the statute upon its incorporation and adoption in our Code, the construction placed thereon by the Georgia court does not follow, and cannot control in this state. Appearing in the Georgia Code of 1914 as subsection 3 of section 3364 (old Code, § 1989), the statute in question finds place in our Code of 1907 as subsection 3 of section 3011, with the significant change, be it noted, that there are omitted therefrom the words "real property." The Georgia statute reads:

"Upon all suit for the recovery of real or personal property, and upon all judgments or decrees for the recovery of the same, attorneys at law shall have a lien on the property recovered, for their fees superior to all liens but liens for taxes, which may be enforced by said attorneys at law or their unlawful representatives, as liens on personal and real estate by mortgage and foreclosure."

The construction placed on the Georgia statute by the Supreme Court of that state (Wooten v. Denmark, 85 Ga. 578, 11 S. E. 861; McCalla v. Nichols, 102 Ga. 28, 28 S. E. 988), was, that the attorney's lien extended and attached in all suits for the recovery of real and personal property, to the real and personal property so directly or indirectly recovered by or in the litigation; that this was not only "within the spirit and equity of the statute," but was "within its letter." With such construction of the Georgia statute before the Alabama code commissioner and the code committee of the Alabama Legislature, the Georgia law was rewritten and incorporated as section 3011 of our Code; and it must be held to have been the legislative intent, touching the real estate of the client, whether obtained directly or indirectly as the result of the litigation, to depart from the letter, the spirit, and the construction of the Georgia statute. As rewritten by our code committee, the significant and material changes were: The insertion in subsection 1, after the words "for services rendered to them," of the words "in reference thereto"; and the omission from subsection 3 of the words "real or" after the words "upon all suits for the recovery of," and before the words "personal property."

[4] The statutory system now prevails in Alabama, and the attorney's lien is fixed and governed thereby. Code 1907, §§ 3009-3011; Gen. Acts 1903, p. 33, § 1; p. 346, § 9; Bidwell v. Johnson, 191 Ala. 195, 198, 67 South. 985; Long v. Long, 195 Ala. 560, 70 South. 733; Harton v. Amason, supra; Denson v. Ala. Fuel & Iron Co., supra; Lowery v. Illinois Central R. R. Co., 195 Ala. 144, 69 South. 954; Empire Coal Co. v. Bowen, 195 Ala. 348, 70 South. 283.

It results from what we have said that the bill was without equity, and that the demurrer should have been sustained. The judgment of the lower court is reversed, and the cause is remanded for proper order in consonance herewith.

Reversed and remanded.

McCLELLAN, MAYFIELD, and GARDNER, JJ., concur. ANDERSON, C. J., and SAYRE and SOMERVILLE, JJ., dissent.